RECORD NO. 16-2214

In The

# United States Court of Appeals

For The Fourth Circuit

## ARLEAN K. BROWN, as the Personal Representative of Melvin K. Lawhorn,

*Plaintiff – Appellee,*

v.

## BRIAN ELLIOTT; JIM MATTHEWS, individually and in his official capacity as the Sheriff of Kershaw County; KERSHAW COUNTY SHERIFF'S OFFICE; KERSHAW COUNTY,

*Defendants – Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AT COLUMBIA

_____

### BRIEF OF APPELLANTS

_____

H. Thomas Morgan, Jr.
DuBOSE-ROBINSON, PC
Post Office Drawer 39
Camden, South Carolina 29201
(803) 432-1992

*Counsel for Appellants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................... iii

CORPORATE DISCLOSURE STATEMENT ................................. iv

I.    STATEMENT OF SUGJECT MATTER AND APPELLATE
      JURISDICTION ...................................................................... 1

II.   STATEMENT OF ISSUES PRESENTED FOR REVIEW ............. 2

III.  STATEMENT OF THE CASE ..................................................... 2

IV.   SUMMARY OF THE ARGUMENT ............................................ 11

V.    ARGUMENT ........................................................................... 13

      1.    THE DISTRICT COURT IMPROPERLY AWARDED
            PLAINTIFF ATTORNEY FEES AS, IN THIS CASE,
            SUCH AN AWARD WAS INEQUITABLE, NOT
            WARRANTED GIVEN THE CIRCUMSTANCES AND
            CASE LAW, AND CREATED A DANGEROUS
            PRECEDENT FOR LITIGANTS GOING FORWARD BY
            INCENTIVIZING COUNSEL TO NOT PARTICIPATE
            IN MEANINGFUL DISCOVERY ...................................... 13

            Standard of Review ...................................................... 13

            Definition of "dash-cam" ............................................. 13

            Appellee's failure to utilize discovery rules ................. 15

            Appellants' actions do not rise to actionable violations
            pursuant to Rule 37 ..................................................... 16

            *Zornes v. Specialty Indus., Inc.* .................................. 17

            *Melton ex rel. Dutton v. Carolina Power & Light Co.* ..... 19

VI.    CONCLUSION ................................................................................21

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Pages(s)**

**CASES**

*McAfee v. Boczar,*
   738 F.3d 81 (4th Cir. 2013) .......................................................... 13

*Melton ex rel. Dutton v. Carolina Power & Light Co.,*
   2012 WL4322520 (4th Cir. Sept. 12, 2012) ..................... 19, 20, 21

*Robinson v. Equifax Info. Servs., LLC,*
   560 F.3d 235 (4th Cir. 2009) ...................................................... 13

*Stillman v. Edmund Sci. Co.,*
   522 F.2d 798 (4th Cir. 1975) ...................................................... 17

*Zornes v. Specialty Indus., Inc.,*
   No. 97–2337, 1998 WL 886997 (4th Cir. Dec.21, 1998) ... 17, 18, 19, 20

**STATUES**

42 U.S.C. § 1983 .............................................................................. 1, 3

28 U.S.C. § 1331 ................................................................................. 1

28 U.S.C. § 1367 ................................................................................. 1

28 U.S.C. § 1291 ................................................................................. 1

**RULE**

Fed. R. Civ. P. 37 ............................................ 12, 15, 16, 17, 19, 21

Local Civil Rule 7.02, D.S.C. ........................................................ 15

Local Civil Rule 37.01 .................................................................. 20

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. ___16-2214___    Caption: ___Arlean Brown v. Brian Elliot___

Pursuant to FRAP 26.1 and Local Rule 26.1,

___Brian Elliot; Jim Matthews, individually and in his official capacity as the Sheriff of Kershaw County;___
(name of party/amicus)

___and Kershaw County Sheriff's Office___

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

iv

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: s/H. Thomas Morgan, Jr.                    Date:    1/23/2017

Counsel for: Appellant

## CERTIFICATE OF SERVICE
*****************************

I certify that on ____1/23/2017____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Robert V. Phillips, Esq.
McGowan, Hood & Felder, LLC
1539 Health Care Drive
Rock Hill, South Carolina 29732

s/H. Thomas Morgan, Jr.                              1/23/2017
        (signature)                                      (date)

v

# I.  STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

## A.  BASIS FOR SUBJECT MATTER JURISDICTION IN THE DISTRICT COURT

Plaintiff/Appellee ("Appellee") initiated this action by filing a Summons and Complaint in state court on February 25, 2014 and serving the same on Defendants/Appellants ("Appellants") on or about March 7, 2014, and March 10, 2014. (JA 9) Appellants timely filed a Notice of Removal to the United States District Court on March 31, 2014. (JA 24) Appellee's Complaint alleged, in pertinent part, that Appellants violated 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the U.S. Constitution. (JA 9) The District Court therefore had original jurisdiction pursuant 28 U.S.C. § 1331 and supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367. Because the claims in the case were properly removed to federal court under both original and supplemental jurisdiction, the District Court had proper jurisdiction.

## B.  BASIS FOR JURISDICTION IN THE COURT OF APPEALS

The United States Courts of Appeal have jurisdiction over final decisions of District Courts pursuant to 28 U.S.C. § 1291. The District Court entered an Order granting in part Appellee's Motion for Sanctions on July 20, 2016. (JA 731) Appellants filed a Motion for Reconsideration of the

District Court's Order on August 31, 2016. (JA 733) The District Court entered an Order Denying Appellants' Motion for Reconsideration on September 23, 2016 (JA 793), and an Order Awarding Attorney Fees to Appellee on September 30, 2016. (JA 818) Appellants timely filed a Notice of Appeal of the aforementioned orders on October 20, 2016. (JA 821) This Court therefore has jurisdiction over the District Court's final decision to award attorney fees and costs to Appellee.

## II.  STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    THE DISTRICT COURT ERRED IN AWARDING ATTORNEY FEES AND COSTS TO APPELLEE AS THERE WAS NO EVIDENCE THAT APPELLANTS WITHHELD OR DESTROYED EVIDENCE, ACTED IMPROPERLY PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE, OR DELIBERATELY NONCOMPLIED WITH THE RULES' REQUIREMENTS REGARDING DISCOVERY IN THIS CASE.

## III.  STATEMENT OF THE CASE

*Nature of the Case*

This case involves allegations stemming from the death of Melvin Lawhorn on February 28, 2012, during a traffic stop conducted during a narcotics investigation. Appellee contends Appellants caused Lawhorn's death and brought the following causes of action against Appellants: Fourth and Fourteenth Amendment Violation against all Appellants for improper search and seizure, excessive force and due process violation

2

under 42 U.S.C. § 1983, deliberate indifference to Lawhorn's constitutional rights under 42 U.S.C. § 1983, common law claims for negligence and gross negligence pursuant to the South Carolina Tort Claims Act against Jim Matthews in his official capacity, Kershaw County Sheriff's Office, and Kershaw County, and common law wrongful death and survival claims against all Appellants.

*Facts[1]*

On February 28, 2012, Kershaw County Sheriff's Office Narcotics Unit Deputies Brian Elliott, Mickey Sellers, and Kirk Willis, along with South Carolina Law Enforcement Division ("SLED") Agent Jack Rushing, were on assignment doing surveillance. At that time Deputy Sellers received a phone call from a confidential informant ("CI") indicating that Melvin Lawhorn would be purchasing a large quantity of powder cocaine in or around Rembert, South Carolina and would be transporting the cocaine to a location on James West Road. (JA 64, JA 100) Deputy Sellers had worked with the CI in the past and the CI had proven to be reliable. (JA 100) The CI provided the license plate number for and a description of the vehicle in which Lawhorn would be traveling and the route the vehicle would be

---

[1] For purposes of this Brief, Appellants present herein an abbreviated version of the facts. Appellants incorporate the version of the facts, including all citations and exhibits, as presented in their Motion for Summary Judgment, JA 41, as if fully recited herein.

taking and said that he would notify the officers when Lawhorn was in route. (JA 64)

The officers then set up a perimeter along the anticipated travel route. (JA 64) Deputy Elliott maintained a position backed into a dirt road off the main road for approximately an hour and a half until he and the other officers were notified that the vehicle believed to be carrying Lawhorn was approaching their position. (JA 64) When the vehicle passed his location, Deputy Elliott pulled out slowly, turned his lights on and began following the vehicle. (JA 64) Deputy Elliott noticed that the truck seemed to be traveling at a high rate of speed and that it failed to maintain its lane as it approached a curve. (JA 64) Deputy Elliott announced on his radio that he observed a traffic violation by the vehicle and that he was going to initiate a traffic stop. (JA 64)

Deputy Elliott activated his emergency lights to signal for the vehicle carrying Lawhorn to pull over. (JA 64) The vehicle then turned onto Old Stagecoach Road and slowed down but did not stop. (JA 64) Deputy Elliott reported that Lawhorn was in the passenger seat and was looking back at Deputy Elliott. (JA 64)  Deputy Elliott found it suspicious that the vehicle proceeded further than it should have before stopping. (JA 64) Deputies

Sellers and Threatt were approaching but had not yet arrived when the vehicle finally came to a stop. (JA 64)

Darryl Herbert, the driver of the vehicle in which Lawhorn was a passenger, testified during his deposition that Lawhorn did not want Herbert to stop for the officers and told Herbert to pull off when the police get out of the car. (JA 105) Herbert was aware that he was being pulled over by law enforcement due to the activated blue lights on the vehicles. (JA 105)

As Deputy Elliott was approaching the passenger side of the vehicle driven by Herbert and carrying Lawhorn, Deputy Sellers was pulling up in his vehicle. (JA 64) Deputy Elliott noticed that Lawhorn, who, according to the CI, usually carried a firearm, was continuing to look back at Deputy Elliott. (JA 64) Herbert testified that the passenger window was "halfway down" when Deputy Elliott approached the passenger side of Herbert's vehicle. (JA 105) This is supported by photographs taken after the incident showing the passenger window of Herbert's vehicle to be partially open. (JA 134, JA 135)

When Deputy Elliott arrived at the passenger door, Lawhorn jumped over to the driver's side of the vehicle, pushed Herbert out of the way and against the driver's side door, grabbed the steering wheel and began

5

attempting to put the car in drive. (JA 64)  Herbert reported that the officers approached his vehicle with their guns drawn (JA 105) but the officers testified that they did not have their weapons drawn as they approached the vehicle. (JA 64, JA 100, JA 121) Herbert testified that the officers gave verbal commands of "freeze" and "don't move." (JA 105)

Herbert testified that Lawhorn "put his left foot on top of my foot, and we acceled off" despite Herbert's efforts to stop the vehicle by holding the brake. (JA 105) According to Herbert, Lawhorn "tried to run . . . tried to get away" and "was focusing on trying to get the truck to go down the road to get away." (JA 105) Herbert also reported that his right foot was pinned to the gas pedal by Lawhorn's left foot and that Lawhorn grabbed and pulled the gearshift down to put the vehicle in drive. (JA 105) A photograph taken after the incident shows Lawhorn's left leg positioned in the driver's area in the vicinity of the gas pedal. (JA 136)

Herbert testified that Deputy Elliott was holding onto Lawhorn and giving verbal commands for Lawhorn to stop. (JA 105)  Herbert testified he saw Deputy Elliott's torso partially inside the passenger side window.  (JA 105)  Deputy Elliott reached inside the vehicle and attempted to grab Lawhorn and pull him away from the gas pedal and steering wheel but Lawhorn continued to resist despite Deputy Elliott's commands to stop. (JA

6

64) While Deputy Elliott was leaning into the truck, Lawhorn revved the engine with his left foot and attempted to put the truck in drive and pull away. (JA 64)  When Lawhorn put the truck in drive and the truck began to move, Deputy Elliott had his right hand on Lawhorn while Lawhorn tried to push Deputy Elliott away. (JA 64) When the truck started moving, Deputy Elliott tried unsuccessfully to get out of the window then attempted to keep up with the acceleration of the truck by running alongside. (JA 64) As the truck accelerated, Deputy Elliott could not run fast enough to keep up, his legs began dangling and he was dragged along by the truck. (JA 64) Photographs of toe drag marks support Deputy Elliott's testimony that he was dragged by Herbert's vehicle. (JA 137, JA 138, JA 139, JA 140, JA 141)

As Deputy Elliott was dragged by the truck, in fear for his safety, he fired one shot into the truck with his left hand. (JA 64) Deputy Elliott is left-handed and wore his holster on his left thigh at the time of the incident. (JA 64) Deputy Elliott's shot went into the vehicle without shattering the vehicle's rear window. (JA 142)

After the shot, Deputy Elliott fell to the ground and the truck ran over his right leg and foot. (JA 64) Photographs taken after the incident showing tire marks on Deputy Elliott's pants and right boot unmistakably show Herbert's truck ran over Deputy Elliott's right leg and foot. (JA 143, JA 144,

JA 145, JA 146)  Photographs of the area where Deputy Elliott landed after falling from Herbert's vehicle and where the shell casing from Deputy Elliott's firearm came to rest support Elliott's testimony that he fell from the vehicle shortly after discharging his firearm. (JA 147, JA 148) Deputy Elliott attempted to get up and pursue the vehicle but was unable to do so. (JA 64)

Deputy Threatt witnessed Deputy Elliott being dragged by Herbert's vehicle. (JA 121) Deputy Threatt then returned to his vehicle to pursue the suspect. *(JA 121)* After getting into his patrol vehicle, Deputy Threatt heard a "pop" followed by a thud that sounded like Herbert's truck ran over a large object. (JA 121) Herbert's vehicle rammed into Deputy Threatt's patrol vehicle for a short distance before running off the road and into the woods. (JA 121) Deputy Threatt did not see any signs of life from Lawhorn, who was found in the central area of the truck near the steering wheel. (JA 121) Photographs clearly show Lawhorn's left leg in the driver's area near the gas pedal.  (JA 136)  As a result of the impact, Deputies Threatt and Sellers pulled Herbert from the vehicle and Deputy Threatt called EMS to the scene. (JA 100, JA 121)

Darryl Herbert testified the truck was moving at the time Deputy Elliott fell from the window after the shot was fired. (JA 105) Deputy Elliott

testified that Lawhorn re-entered the roadway in a reckless manner and his attempts to flee the scene could have injured or killed someone. (JA 64) When Deputy Elliott discharged his firearm, he was in fear for his life and safety and for the lives and safety of Deputy Sellers and others in the vicinity. (JA 64) The actions of Lawhorn, including jumping into the driver's area of Herbert's vehicle, pressing the gas pedal and putting the vehicle in drive in an attempt to flee the scene, also caused Deputy Threatt to fear for his life and safety, the lives and safety of Deputies Sellers and Elliott and the lives and safety of any bystanders, pedestrians or drivers that may have been in the area. (JA 121)

The South Carolina Law Enforcement Division (SLED) conducted an investigation of the circumstances surrounding Lawhorn's shooting. The investigation was led by Senior Special Agent James Flowers, who produced an Investigative Report, File 32-12-0020, on or about April 4, 2012. (JA 149) KCSO fully cooperated with SLED during the investigation. Notably, the SLED report does not contain nor reference any dash-cam video. (JA 149)

Dan Johnson, Solicitor for the Fifth Judicial Circuit, thoroughly reviewed SLED File No. 32-12-0020, and issued a report dated July 30, 2012. (JA 224)  Solicitor Johnson found Defendant Elliott, while acting in

the course of his duties as a Deputy of the Kershaw County Sheriff's Office, acted in accordance with all applicable State and Federal laws. (JA 224) Solicitor Johnson also found that Defendant Elliott's use of force was reasonably necessary in light of all circumstances gleaned from SLED's investigation. (JA 224) Solicitor Johnson found Defendant Elliott's use of lethal force was applied in good faith based upon the perceptions of a reasonably trained office and the objectively reasonable facts Defendant Elliott had at the time of the incident. (JA 224) Solicitor Johnson found that based on the circumstances, the immediacy of the situation, and that Defendant Elliott was in fear for his life, lethal force was necessary to protect Defendant Elliott's life as well as the lives of KCSO deputies and innocent bystanders in the area. (JA 224) Solicitor Johnson concluded that there was no evidence of criminal wrongdoing and that Deputy Elliott's actions were legally justified based on the circumstances presented to him on February 28, 2012. (JA 224)

*Procedural History*

Plaintiff filed a Summons and Complaint in state court on February 25, 2014, and served the same on Defendants on or about March 7, 2014, and March 10, 2014. (JA 9) Defendants timely filed a Notice of Removal to the United States District Court and their Answer on March 31, 2014. (JA

10

24, JA 27) In their Answer, Defendants denied Plaintiff's claims and maintain that Defendant Elliott acted reasonably in using deadly force as he was reasonably in fear of his life and the lives and safety of fellow officers and the public at large based upon Lawhorn's recklessly trying to flee from policy while driving a pickup from the passenger seat. Defendants filed their Motion for Summary Judgment and Plaintiff filed her Motion for Default Judgment on January 29, 2016. (JA 39, JA 318)

Plaintiff's Motion for Default Judgment was granted in part as to Plaintiff's Motion for Sanctions and Attorney Fees on July 20, 2016 (JA 731), and both parties filed Motions for Reconsideration on August 31, 2016. (JA 733, JA 768) Said Motions for Reconsideration were denied on September 23, 2016. (JA 793) Defendants' Motion for Summary Judgment was granted in part on September 27, 2016, with Plaintiff's federal claims being dismissed and the remaining state law claims being remanded to state court. (JA 795) Plaintiff was awarded attorney fees in the amount of $11,500.00 on September 30, 2016. (JA 818) Defendants filed a Notice of Appeal on October 20, 2016, (JA 821) and Plaintiff filed a Notice of Appeal on October 21, 2016. (JA 823).

### III.  SUMMARY OF THE ARGUMENT

The District Court dismissed Appellee's Motion to Enter Default

Judgment and For Other Relief against Appellants and, in the process, concluded, "The plaintiff has failed to establish that any video of the encounter at issue *ever actually existed.*" (JA 731, emphasis added). Despite this, the Court awarded Appellee attorney's fees and costs incurred with Appellee's motion pursuant to Fed. R. Civ. P. 37(c). (JA 731) Appellants submit such an award is inequitable, not warranted given the circumstances and case law, and creates a dangerous precedent for litigants going forward by incentivizing counsel to not participate in meaningful discovery. The most notable negative precedent that might result from the award is the tacit approval of Appellee's complete and utter failure to utilize the Federal Rules of Civil Procedure relating to discovery motions.

Further, the record before the Court amply demonstrates that there was never an in-car camera, or "dash-cam," that Appellants then tried to conceal. Appellee had the necessary evidence, produced by an outside party, more than two (2) years prior to her motion at issue. (JA 733, JA 748, JA 753, JA 754, JA 755) Appellee could have presented her concerns to Appellants and easily resolved her misconceptions prior to this motion but failed to do so. Moreover, the great weight of case law demonstrates Appellants' actions do not rise to the level of sanctions as contemplated by Rule 37, Fed. R. Civ. P. Accordingly, Appellants respectfully ask this Court

to reverse the District Court's award of attorney's fees and costs to Appellee.

## IV. ARGUMENT

1.    THE DISTRICT COURT IMPROPERLY AWARDED PLAINTIFF ATTORNEY FEES AS, IN THIS CASE, SUCH AN AWARD WAS INEQUITABLE, NOT WARRANTED GIVEN THE CIRCUMSTANCES AND CASE LAW, AND CREATED A DANGEROUS PRECEDENT FOR LITIGANTS GOING FORWARD BY INCENTIVIZING COUNSEL TO NOT PARTICIPATE IN MEANINGFUL DISCOVERY.

**<u>Standard of Review</u>**:  The district court's award of attorney fees to Plaintiff is reviewed for abuse of discretion. *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). This Court should reverse the award if the district court was plainly wrong or committed an error of law. *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013), <u>as amended</u> (Jan. 23, 2014).

<u>Definition of "dash-cam"</u>

Throughout the pendency of this litigation, Appellee and Appellants have interchangeably used the terms "dash-cam" and "dash-cam video" without either understanding what the other party apparently means or intends.   Appellants note that "camera" is defined as, "A device for *recording* visual images in the form of photographs, film or video signals." (emphasis added).[2]  As indicated in the affidavit of Captain Patrick Boone

---

[2] *See* https://www.oxforddictionaries.com/us/definition/american_english/camera

of the Kershaw County Sheriff's Office, an in-car camera, or "dash-cam," consists of:

    a.    A camera head or lens, often referred to as a "camera head unit" that is typically mounted to the windshield of the patrol vehicle.

    b.    An in-car video monitor, depending on the type of camera, it would be mounted in the area of the passenger side visor area.

    c.    A recording device typically mounted in the trunk or rear area of the patrol vehicle.

    d.    An external microphone that is usually worn on the Deputy's person.   (JA 758)

Captain Boone unequivocally stated that, "An in-car camera system has to be complete to be fully functional and to be considered an in-car camera or 'dash-cam.'" (JA 758) Thus, when questioned by Appellee about the existence of a "dash-cam" in Deputy Threatt's patrol car, it is easy to see why on each and every opportunity Defendants have stated there was not – the camera head unit, by itself, does not constitute a "dash-cam" since it cannot record any video.  (JA 462, JA 758).

The district court, along with the parties, understandably appears to have been caught up in the confusion regarding this term that was interchangeably used by the parties. Defendants maintain that Appellee's

14

Motion and confusion as to "dash-cam" and "dash-cam video" could have been avoided if Plaintiff had utilized the discovery procedures provided by the Federal Rules of Civil Procedure.

<u>Appellee's failure to utilize discovery rules</u>

Appellee relied upon photographs produced to her by a non-party before the initiation of the underlying lawsuit to base her allegations that Appellants lied and destroyed evidence, which the district court ultimately rejected.[3]  Yet the district court awarded attorney's fees and costs pursuant to Rule 37(c), Fed. R. Civ. P., for perceived discovery violations that pertain to materials Appellants <u>did not</u> produce.  Appellants maintain that if Appellee had any further questions about the photographs that showed an in-car camera head unit she should have filed an appropriate discovery motion pursuant to Rule 37, Fed. R. Civ. P., <u>after</u> consulting with Appellants as required by Local Civil Rule 7.02.

In this case, despite having the information and photographs (provided to Appellee by a non-party and subsequently produced <u>by</u> Appellee <u>to</u> Appellants) available to her for over two (2) years, Appellee

---

[3] Appellants note that the district court, "[b]ased on the record before it, … conclude[s] that the plaintiff has failed to establish that any video of the encounter at issue ever existed."  (JA 858)  The district court appears to have come to that conclusion based upon information provided by Sheriff Matthews in his Affidavit.  (JA 460)  Appellants respectfully assert that, using the district court's logic in determining there was no video that existed, that is because there was no "dash-cam" as Appellants have stated all along.  For this reason and those stated elsewhere, Appellants respectfully ask the Court to reverse the district court's award of attorney's fees and costs.

filed her Motion for Entry of Default Judgment on the last day to file dispositive motions instead of contacting Appellants and/or filing a discovery motion beforehand pertaining to the evidence of an alleged "dash-cam." As Rule 37(a)(1), Fed. R. Civ. P. provides, "On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." That did not happen in this case.

Appellants have been materially prejudiced by Appellee's failure to properly abide by the rules governing discovery.  Had they been given the opportunity, via consultation pursuant to Local Rules and a proper Rule 37 motion, Appellants believe the district court would not have needed to be involved as the question involving Appellee's belief that a "dash-cam" existed could have been addressed expeditiously and at the proverbial "lowest level possible."  Given Appellee's failure to consult with Appellants concerning the perceived discrepancy in discovery evidence, the district court's award of attorney's fees and costs was contrary to the spirit of the discovery rules and Appellants ask the Court to reverse the order.

Appellants' actions do not rise to actionable violations pursuant to Rule 37.

Federal Rule of Civil Procedure 37 permits a court to require a party who provides evasive or incomplete disclosure to pay costs and attorney's fees of the requesting party. Fed.R.Civ.P. 37(c), (d).  A court should not order sanctions under the Rule if the opposing party's failure was substantially justified <u>or other circumstances make an award of expenses unjust</u>. Fed.R.Civ.P. 37(d)(3) (emphasis added).  This is in keeping with "[t]he purpose of Rule 37 [, which] is to allow the district courts to punish <u>deliberate noncompliance</u> with the federal rules of discovery and to deter such conduct in the future." *Zornes v. Specialty Indus., Inc.,* No. 97–2337, 1998 WL 886997 (4th Cir. Dec.21, 1998) (emphasis added); see also *Stillman v. Edmund Sci. Co.,* 522 F.2d 798, 801 (4th Cir. 1975) ("The Rule by its terms limits an assessment thereunder to fees and expenses flowing from an abuse of the discovery process.").

Appellants steadfastly maintain their actions did not rise to the level that discovery sanctions should have been issued.  Several cases should be viewed by this Court in guiding its decision to reverse the order awarding attorney's fees and costs to Appellee.

### *Zornes v. Specialty Indus., Inc.*

In *Zornes*, *supra.*, this Court was faced with a litigant with an extensive history of discovery abuses. The United States District Court for

the district of Maryland had repeatedly issued warnings to the abusive party regarding failure to comply with court orders relating to discovery, misrepresenting facts, providing a "questionable response to a Show Cause Order" and for directly violating a Court order. *Id.* In *Zornes*, a central issue was the repeated denial of the existence of a particular document that ultimately was produced more than sixty (60) days past due and just before the scheduling order deadline ended. *Id.* The district court repeatedly warned the abusive party that its failure to abide by discovery rules could result in sanctions, and ultimately dismissed the abusive party's case, a decision upheld by the United States Court of Appeals, Fourth Circuit. *Id.*[4]

In contrast to *Zornes*, in this case there have been no warnings issued to Appellants for repeated discovery violations, no hearing before the Court resulting in an issue of a Show Cause Order, and no production of evidence that was originally claimed not to exist. Rather, the only issue the Court appears to base its determination for sanctions is the question about whether a "dash-cam" exists – an issue that ultimately has been proven, as repeatedly indicated by Appellants, not to be the case. Based upon *Zornes*,

---

[4] Appellants acknowledge the fact the *Zornes* Complaint was dismissed as a sanction where in this matter the sanction is just the assessment of attorney's fees and costs. Appellants point to the complete difference in facts presented by the two cases as reason for no award of fees or costs.

Appellants assert their conduct did not rise to the level of sanctions as there has been no deliberate noncompliance. *Id.*

### *Melton ex rel. Dutton v. Carolina Power & Light Co.*

Likewise, the case of *Melton ex rel. Dutton v. Carolina Power & Light Co.*, 2012 WL4322520, Sept. 12, 2012, is singularly instructive. In *Melton*, there was a question regarding discovery responses about the existence of certain easements. *Id.* Upon receipt of Defendant's responses, Plaintiff reached out to Defendant via email and asked whether other information existed. *Id.* Defendant responded that the responses were representative of a larger amount of easements. *Id.* After Plaintiff endeavored to conduct further extensive research about the easements, at a deposition of Defendant's corporate representative Plaintiff claimed to uncover evidence of further easements more representative than those previously disclosed in discovery. *Id.* At this point Plaintiff sought and received further written discovery from Defendant. *Id.* However, more than a month after receiving the information he filed a Rule 37 Motion for Sanctions seeking the costs and attorneys' fees incurred in procuring the various easements, arguing that these costs and fees were incurred as a direct result Defendant's withholding of relevant easements. *Id.*

19

The *Melton* court ultimately found Plaintiff was not entitled to sanctions. *Id.* Relying upon *Zornes,* the *Melton* court noted that before Plaintiff devoted a substantial amount of time to uncovering the proper easements, Plaintiff was aware that the easements produced were, at a minimum, not the easements he had hoped to procure. *Id.* The Court in *Melton* found nothing in the record indicating that Plaintiff, after this discovery, again contacted opposing counsel to discuss the problematic or non-representative easements. *Id.* The court also noted Plaintiff never filed a motion to compel at any point during this process.[5] Further, to the extent Plaintiff's failure to produce the easements at issue was problematic, the Court noted Plaintiff, after learning of the extent of any failure to properly produce documents at Defendant's corporate deposition, waited nearly forty-five days before filing the Motion for Sanctions. *Id.* Ultimately, the *Melton* Court denied the motion for sanctions.

In the instant case, as in *Melton*, sanctions are not appropriate. It is without question that, unlike *Melton*, at no point in time prior to the filing of the motion did Appellee reach out to Appellants to discuss the perceived discrepancy in the existence of "dash-cam evidence" nor did Appellee file any discovery motions, timely or otherwise. At no point in time were

---

[5] The *Melton* court noted that, pursuant to Local Civil Rule 37.01, a motion to compel "must be filed within twenty-one (21) days after receipt of the discovery response to which the motion to compel is directed...."

Appellants deliberately non-compliant in discovery and Appellants timely answered all interrogatories and requests for production truthfully and in good faith. Moreover, Appellants never withheld any evidence. Thus, Appellants respectfully ask this Court to follow the *Melton* court, find sanctions of attorney's fees and costs were unwarranted and reverse the decision of the district court.

## V. CONCLUSION

The district court improperly awarded attorney fees and costs to Appellee. Appellants insist there is no evidence they withheld or destroyed evidence, acted improperly pursuant to the Federal Rules of Civil Procedure, or deliberately contravened the Rules' requirements regarding discovery in this case. The record before the Court amply demonstrates that there was never an in-car camera, or "dash-cam," that Appellants then tried to conceal. Appellee had the necessary evidence, produced by an outside party, more than two (2) years prior to her motion at issue. Appellee could have presented her concerns to Appellants and easily resolved her misconceptions prior to this motion but failed to do so. Moreover, the great weight of caselaw demonstrates Appellants' actions do not rise to the level of sanctions as contemplated by Rule 37, Fed. R. Civ. P. For the foregoing reasons, Appellants respectfully ask the Court to reverse

the Order of the district court granting Plaintiff's Motion for Default Judgment and Other Relief as to the award of attorney's fees and costs to Plaintiff.

Respectfully submitted,

/s/ H. Thomas Morgan, Jr.
H. Thomas Morgan, Jr.
DuBOSE-ROBINSON, PC
Post Office Drawer 39
Camden, South Carolina 29201
(803) 432-1991
tommy@duboselaw.com

*Counsel for Appellants*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 23th day of January, 2017, I caused this Brief of Appellants to be filed electronically with the Clerk of the court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF user:

Robert V. Phillips
McGowan, Hood & Felder, LLC
1539 Health Care Drive
Rock Hill, South Carolina 29732
*Counsel for Appellee*

/s/ H. Thomas Morgan, Jr.
*Counsel for Appellants*